UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
(at Pikeville)

| | |
|---|---|
| CHARLES EDWARD JOHNSON, ) | |
| ) | |
|     Plaintiff, ) | Civil Action No. 7: 15-039-DCR |
| ) | |
| V. ) | |
| ) | |
| CAROLYN W. COLVIN, ) | **MEMORANDUM OPINION** |
| Acting Commissioner of Social Security, ) | **AND ORDER** |
| ) | |
|     Defendant. ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is pending for consideration of cross-motions for summary judgment filed by Plaintiff Charles Johnson (hereafter, "Johnson" or "the Claimant") and Defendant Carolyn W. Colvin, Acting Commissioner of Social Security ("the Commissioner"). [Record Nos. 12, 15] Johnson argues that the Administrative Law Judge ("ALJ") erred in concluding that he is not entitled to a period of disability and disability insurance benefits. However, the Commissioner contends that the ALJ's decision is supported by substantial evidence and should be affirmed. For the reasons discussed below, remand for further proceedings is necessary.

**I.**

On April 16, 2012, Johnson filed an application for a period of disability and disability insurance benefits under Title II of the Social Security Act ("the Act"). [Administrative Transcript, "Tr.," p. 157] He alleged a disability beginning March 23, 2012. [Tr., p. 164] Johnson, along with attorney William Arnett and vocational expert ("VE")

William Harpool, appeared before ALJ Karen R. Jackson on November 26, 2013, for an administrative hearing. [*Id.*, pp. 26−27] On February 19, 2014, ALJ Jackson found that Johnson was not disabled under sections 216(i) and 223(d) of the Act. [*Id.*, p. 18] Johnson appealed the ALJ's determination to the Social Security Administration's Appeals Council. However, the council declined the Claimant's request for review. [*Id.*, p. 1]

Johnson was 47 years-old when his alleged disability began, and 49 years-old at the time of the ALJ's decision. [Tr., pp. 27, 55, 164] He has a twelfth-grade education and previously worked as a coal miner. [*Id.*, p. 238] After considering the testimony presented during the administrative hearing and reviewing the record, the ALJ concluded that Johnson suffers from the following severe impairments: (i) degenerative joint disease ("DJD") of the right shoulder; (ii) degenerative disc disease/bulging discs in the lumbar spine; (iii) degenerative disc disease of the cervical spine; (iv) bilateral carpal tunnel syndrome; (v) chronic obstructive pulmonary disease ("COPD"); and (vi) status post left hand laceration. [*Id.*, p. 13]

Notwithstanding the impairments identified above, the ALJ determined that Johnson maintained the residual functional capacity ("RFC") to perform light work, with the following constraints:

> no more than frequent climbing of ramps and stairs, is unable to climb ladders, ropes, and scaffolds, is limited to occasional stooping, kneeling, crouching, and crawling, must avoid fumes, odors, dusts, gases, poor ventilation, full body vibration, and hazards, such as unprotected heights and dangerous machinery. The claimant is limited to work with a moderate level of noise intensity, is limited to frequent overhead reaching with the right upper extremity, and is limited to frequent handling, fingering, and feeling with the bilateral upper extremities.

[*Tr.*, p. 15]

After considering Johnson's age, education, work experience, and RFC, ALJ Jackson concluded that the Claimant could perform a significant number of jobs in the national economy, including night watchman, work in bench assembly, and work in inspecting. [*Id.*, pp. 17−18] As a result, the ALJ determined that Johnson was not disabled from March 23, 2012, through the date of the administrative hearing. [*Id.*, p. 18]

## II.

Under the Act, a "disability" is defined as "the inability to engage in 'substantial gainful activity,' because of a medically determinable physical or mental impairment of at least one year's expected duration." *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 539 (6th Cir. 2007) (citing 42 U.S.C. § 423(d)(1)(A)). A claimant's Social Security disability determination is made by an ALJ in accordance with "a five-step 'sequential evaluation process.'" *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642 (6th Cir. 2006) (en banc) (quoting 20 C.F.R. § 404.1520(a)(4)). If the claimant satisfies the first four steps of the process, the burden shifts to the Commissioner with respect to the fifth step. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003).

A claimant must first demonstrate that he is not engaged in substantial gainful employment at the time of the disability application. 20 C.F.R. § 404.1520(b). Second, the claimant must show that he suffers from a severe impairment or combination of impairments. 20 C.F.R. § 404.1520(c). Third, if the claimant is not engaged in substantial gainful employment and has a severe impairment which is expected to last for at least twelve months and which meets or equals a listed impairment, he will be considered disabled without regard

to age, education, and work experience. 20 C.F.R. § 404.1520(d). Fourth, if the Commissioner cannot make a determination of disability based on medical evaluations and current work activity and the claimant has a severe impairment, the Commissioner will then review the claimant's RFC and relevant past work to determine whether he can perform his past work. If he can, he is not disabled. 20 C.F.R. § 404.1520(f).

Under the fifth step of the analysis, if the claimant's impairments prevent him from doing past work, the Commissioner will consider his RFC, age, education, and past work experience to determine whether he can perform other work. If he cannot perform other work, the Commissioner will find the claimant disabled. 20 C.F.R. § 404.1520(g). The Commissioner has the burden of proof only on "'the fifth step, proving that there is work available in the economy that the claimant can perform.'" *White v. Comm'r of Soc. Sec.*, 312 F. App'x 779, 785 (6th Cir. 2009) (quoting *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999)).

Judicial review of the denial of a claim for Social Security benefits is limited to determining whether the ALJ's findings are supported by substantial evidence and whether the correct legal standards were applied. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). The substantial-evidence standard presupposes that there is a zone of choice within which decision makers can go either way, without interference from the court. *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006). Substantial evidence is such relevant evidence as a reasonable mind might accept as sufficient to support the conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007).

If supported by substantial evidence, the Commissioner's decision must be affirmed even if the Court would decide the case differently and even if the claimant's position is also supported by substantial evidence. *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 876 (6th Cir. 2007); *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007); *Longworth v. Comm'r of Soc. Sec. Admin.*, 402 F.3d 591, 595 (6th Cir. 2005); *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993). In other words, the Commissioner's findings are conclusive if they are supported by substantial evidence. 42 U.S.C. § 405(g).

### III.

Johnson claims that the ALJ erred in concluding that he does not suffer from "additional" severe impairments. [Record No. 12-1, pp. 1, 10] Additionally, he contends that the ALJ improperly evaluated the opinions of treating and non-treating sources in making her RFC determination. [*Id.*, pp. 10−15] Consequently, Johnson argues that substantial evidence does not support the ALJ's RFC finding. [*Id.*, p. 1]

#### A. Additional Severe Impairments

Johnson first appears to argue that the ALJ erred by failing to classify certain impairments as "severe." *See* 42 U.S.C. § 423(d)(2)(A). However, instead of identifying which impairments were allegedly severe, Johnson merely lists all his medical conditions. [Record No. 12-1, pp. 3−9] For example, Johnson was diagnosed with depression and anxiety, but the ALJ determined that those impairments were non-severe because: (1) Johnson's Global Assessment Functioning ("GAF") score was 75; (2) Dr. William Rigby noted no impairment in Johnson's ability to understand and follow instructions and sustain concentration to complete tasks; and (3) treating physician Dr. Ira Potter documented intact

- 5 -

judgment and insight, normal orientation, and no nervousness, psychosis, hallucinations, or delusions. [Tr., pp. 13−14] Additionally, while the Claimant suffered from hypertension and a left tibia-fibula fracture, the ALJ concluded that such impairments were non-severe because the hypertension was controlled with medication, and the fracture had only a minimal impact on Johnson's ability to perform basic work activities. [*Id.*, p. 13] Johnson does not make any arguments concerning the severity of these impairments. Instead, he focuses on the ALJ's alleged failure to include these impairments in her RFC finding. [Record No. 12-1, p. 10]

It is a claimant's burden to prove the severity of his impairments at the second step of the sequential evaluation process. *See Her*, 203 F.3d at 391. "An impairment or combination of impairments is not severe if it does not significantly limit [a claimant's] physical or mental ability to do basic work activities," which are the "abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1521(a), (b). The Sixth Circuit has held that "the severity determination is 'a *de minimis* hurdle in the disability determination process.'" *Anthony v. Astrue*, 266 F. App'x 451, 457 (6th Cir. 2008) (quoting *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988)). "[A]n impairment can be considered not severe only if it is a slight abnormality that minimally affects work ability regardless of age, education and experience." *Higgs*, 880 F.2d at 862. The mere diagnosis of a condition does not thereby establish its severity. *Id.* at 863.

Once step two is cleared by determining that some severe impairments exist, the ALJ must then consider a claimant's "severe and nonsevere impairments in the remaining steps of the sequential analysis." *Anthony*, 266 F. App'x at 457; S.S.R. 96-8p, 1996 WL 374184, at

\*5 (July 2, 1996). "The fact that some of [a claimant's] impairments were not deemed to be severe at step two is therefore legally irrelevant." *Anthony*, 266 F. App'x at 457.

At step two, the ALJ determined that Johnson suffered from several severe impairments. [Tr., p. 13] However, she did not evaluate the effect of Johnson's mental impairments on his RFC. Although the ALJ indicates that she "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence" in determining the Claimant's RFC, such boilerplate language is insufficient evidence that she considered the mental impairments in the RFC determination. *See Katona v. Comm'r of Soc. Sec.*, No. 14-CV-10417, 2015 WL 871617, \*6 n.3 (E.D. Mich. Feb. 27, 2015). [*Id.*, p. 15] Because the ALJ failed to consider Johnson's mental impairments in the RFC finding, any potential error in classifying his impairments as non-severe may be reversible. *See id.* at \*5; *see also Nejat v. Comm'r of Soc. Sec.*, 359 F. App'x 574, 577 (6th Cir. 2009); *Fisk v. Astrue*, 253 F. App'x 580, 583–84 (6th Cir. 2007). Therefore, the Court will analyze the ALJ's severity determination.

Regarding the ALJ's determination that Johnson's hypertension was non-severe, Johnson merely points out the diagnosis and mentions a few times that it was "uncontrolled." [Record No. 12-1, pp. 8−9] But the mere diagnosis of a condition did not establish its severity. *See Higgs*, 880 F.2d at 863. Further, even Johnson's treating physician Dr. Potter determined that the "uncontrolled" hypertension was only "mild." [Tr., p. 995] With respect to the ALJ's determination that the left tibia/fibula fracture was non-severe, at least two examining sources noted that Johnson had a normal gait and normal joint stability in the lower extremities. [*Id.*, pp. 951, 976] Substantial evidence supports the ALJ's conclusion

that Johnson's hypertension and fracture had only a "minimal impact" on his ability to perform work-related activities during the relevant time period. [*Id.*, p. 13] Therefore, the ALJ did not err in deeming those impairments non-severe.[1] *See Higgs*, 880 F.2d at 862

Likewise, the ALJ did not err in determining that Johnson's mental impairments were non-severe. The ALJ noted that Johnson's GAF score was 75, indicating no more than slight impairment in social or occupational functioning. [Tr., p. 13] She also highlighted that Dr. Rigby found no impairment in Johnson's ability to understand, retain, and follow simple instructions and to sustain concentration. [*Id.*] Further, she observed that Dr. Rigby's examinations revealed no memory problems or psychosis and that Johnson had normal thought content and orientation. [*Id.*, p. 14] In addition, the ALJ commented on Dr. Potter's findings that Johnson had intact judgment and insight, normal orientation, no nervousness or dementia, no psychosis, and no hallucinations. [*Id.*]

Johnson alleges that the ALJ improperly relied on non-examining psychologist Dr. Lea Perritt's conclusions in determining that Johnson's depression and anxiety were non-severe impairments. [Record No. 12-1, p. 10] In particular, he claims that the ALJ "based" her conclusion on Dr. Perritt's findings, which were "inconsistent with the record." [*Id.*] However, the ALJ did not discuss Dr. Perritt's findings until after discussing, in detail, treating physician Dr. Potter's and examining psychologist Dr. Rigby's findings. [Tr., pp. 13−14] Further, the ALJ stated only that she "agree[d] with the DDS Assessment at Exhibit

---

[1] The ALJ did not deem Johnson's hearing limitation to constitute an impairment. The Claimant raises no argument why that limitation constituted an impairment, much a less severe impairment.

- 8 -

4A," the exhibit containing Dr. Perritt's notes. [*Id.*, p. 14] As a result, the ALJ did not give greater weight to Dr. Perritt's opinion.[2]

The Claimant also argues that the ALJ failed to consider portions of Dr. Potter's and Dr. Rigby's findings that indicate the severity of his mental health issues. [Record No. 12-1, pp. 10−11] While Dr. Potter noted Johnson's complaints about fatigue, malaise, weight gain, trouble sleeping, and mood swings, he also concluded on more than one occasion that Johnson had intact judgment and insight, a normal affect without any apparent nervousness or dementia, no hallucinations, no delusions, and no psychotic thoughts. [Tr., pp. 496−97, 519−520] Thus, Dr. Potter's opinion regarding Johnson's depression and anxiety does not lend support to Johnson's theory concerning the severity of those conditions. *See, e.g., Baker v. Comm'r of Soc. Sec.*, 76 F.3d 378 (table), 1996 WL 28965, *1 (6th Cir. 1996) (rejecting the claimant's argument that the ALJ ignored the treating physician's opinion). Moreover, the ALJ was entitled to discount the portion of Dr. Potter's opinion based primarily on Johnson's subjective complaints. *See Tate v. Comm'r of Soc. Sec.*, 467 F. App'x 431, 433 (6th Cir. 2012).

While Dr. Rigby reported that Johnson suffered from "mild-to-moderate functional depression" and "moderate impairment to maintain social interactions," he also stated that Johnson's "most limiting conditions appear to be physical in origin" and that the anxiety was

---

[2] Johnson takes issue with the fact that Dr. Perritt relied only on Dr. Rigby's examination, rather than Dr. Potter's. [Record No. 12-1, p. 12] However, there is no requirement that a non-examining source review the complete record before the ALJ may consider her opinion. *See Brooks v. Comm'r of Soc. Sec.*, 531 F. App'x 636, 642 (6th Cir. 2013) (before ALJ may give greater weight to the opinion of a non-examining source who viewed an incomplete record, he must demonstrate that he considered facts not reviewed by the non-examining source) (citing *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 409 (6th Cir. 2009)).

only a "secondary result." [*Id.*, pp. 978−79] Additionally, Dr. Rigby indicated that the Claimant had "no impairment to understand, retain, and follow simple instructions" and could complete tasks in a normal time frame. [*Id.*, p. 979] Moreover, the psychologist noted that Johnson's social interactions were "polite and cooperative" and that he appeared to have "appropriate social capabilities for his age and background." [*Id.*, p. 978]

The ALJ was permitted to discount the portions of Dr. Rigby's opinion contradicted by Dr. Potter's and Dr. Perritt's opinions. *See* 20 C.F.R. § 404.1527(c)(4); *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 514 (6th Cir. 2010). [*Id.*, pp. 79, 497, 520] Further, Dr. Rigby's opinion was internally inconsistent regarding Johnson's mental health conditions. *See* 20 C.F.R. § 404.1527(c)(3). [*Id.*, pp. 978−79] In addition, the ALJ could discount the opinion because it was based in large part on the Claimant's self-report. *See Smith v. Comm'r of Soc. Sec. Admin.*, 564 F. App'x 758, 764 (6th Cir. 2014); *see also Keeler v. Comm'r of Soc. Sec.*, 511 F. App'x 472, 473 (6th Cir. 2013). [*See id.*, pp. 975−79] The ALJ properly evaluated Dr. Potter's, Dr. Rigby's, and Dr. Perritt's opinions. Because substantial evidence supports her finding that Johnson's mental health conditions were non-severe, the ALJ did not err regarding that issue.

**B. RFC**

Johnson also argues that the ALJ erred in determining his RFC. First, he asserts that the ALJ failed to include limitations and restrictions found by state agency examiners in the RFC. [Record No. 12-1, pp. 10−12] Second, he claims that the ALJ erred in giving great weight to non-examining source opinions. [*Id.*, pp. 12−14] Third, Johnson contends that the ALJ improperly discounted his treating physician's opinion. [*Id.*, pp. 14−16] After a review

of the record, the Court finds one of Johnson's arguments to be persuasive. Specifically, the ALJ's failure to include any evaluation of the mental impairments in her RFC analysis is fatal. Consequently, the Court will remand the case to the ALJ with regard to that error. Regarding the other issues raised by the Claimant, the ALJ applied the proper legal standards, and her findings are supported by substantial evidence.

RFC is "an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." S.S.R. 96-8p, 1996 WL 374184, at *1 (July 2, 1996). The RFC determination is a matter reserved for the ALJ. *See* 20 C.F.R. § 404.1527(d)(2). In making this determination, the ALJ considers the medical evidence, non-medical evidence, and the claimant's credibility. *Coldiron v. Comm'r of Soc. Sec.*, 391 F. App'x 435, 439 (6th Cir. 2010). An ALJ's RFC finding will be upheld where it is supported by substantial evidence.

In determining a claimant's RFC, the ALJ must consider all impairments, "even those that are not severe." 20 C.F.R. § 404.1545; S.S.R. 96–8p, 1996 WL 374184, at *5. In *Katona*, the district court reversed and remanded where the ALJ failed to discuss the claimant's mental impairments in the RFC finding, even though the ALJ had thoroughly discussed them in the severity determination. 2015 WL 871617, at *6−7. The court reasoned that the analysis at step two did "not provide the Court with a basis to infer that Plaintiff's mental impairments, either singly or in combination with Plaintiff's other impairments, generated no work-place restrictions or limitations." *Id.* at *7.

Likewise, in *Patterson v. Colvin*, even though the ALJ distinguished the analyses at steps two and four, the district court reversed and remanded because the ALJ failed to

discuss the non-severe mental impairments in formulating the RFC. No. 5:14cv1470, 2015 WL 5560121, *5 (N.D. Ohio. Sept. 21, 2015). The court reasoned that it was, "at best, unclear whether the ALJ considered the cumulative effect of plaintiff's non-severe mental impairments when formulating the RFC." *Id.* at *4.

Both *Katona* and *Patterson* addressed the substantial evidence standard, concluding that an "ALJ's failure to adequately explain how an impairment affects an individual's RFC may constitute reversible error" even when supported by substantial evidence. *Katona*, 2015 WL 871617, at *7; *see also Patterson*, 2015 WL 5560121, at *2 ("Even when there is substantial evidence, however, a decision of the Commissioner will not be upheld where the [Social Security Administration] fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.") (quoting *Rabbers v. Comm'r of Soc. Sec. Admin.*, 582 F.3d 647, 651 (6th Cir. 2009)) (internal quotation marks and citation omitted).

### 1. Mental Health

Johnson claims that the ALJ failed to accord proper weight to Dr. Potter's and Dr. Rigby's findings regarding the mental limitations affecting his RFC. [Record No. 12-1, p. 10] Although the ALJ discussed those findings in determining the severity of Johnson's depression and anxiety, she failed to mention them in her RFC determination. The language indicating that she "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence" is merely boilerplate that does not demonstrate she truly considered the mental impairments. *See Katona*, 2015 WL 871617, at *6 n.3 (discussing exact language). [Tr., p. 15]

Further, while the ALJ differentiated between the criteria for the severity determination and the mental RFC assessment, explaining that the RFC analysis "reflects the degree of limitation the undersigned [] found in the 'paragraph B' mental function analysis," such boilerplate language does not cure the fact that the ALJ did not actually conduct a proper RFC analysis. *See Patterson*, 2015 WL 5560121, at *4 (quoting exact language); *see also Garcia v. Comm'r of Soc. Sec.*, 105 F. Supp. 3d 805, 810−11 (S.D. Ohio 2015). [*Id.*, p. 14] Because there is no discussion of whether Johnson's non-severe mental impairments contributed to his inability to perform substantial gainful work, remand on this issue is necessary. *See Patterson*, 2015 WL 5560121, at *5.

### 2. Physical Health

Johnson also asserts that the ALJ failed to properly evaluate his physical limitations in determining his RFC. In particular, Johnson claims that the ALJ erred by improperly weighing the opinions of treating physician Dr. Potter and non-examining physician Dr. Allen Dawson. [Record No. 12-1, pp. 12−15]

#### a. Dr. Potter

Johnson contends that the ALJ improperly discounted treating physician Dr. Potter's RFC assessment. [*Id.*, p. 14] The ALJ accorded "little weight" to Dr. Potter's RFC determination because it was not supported by the underlying examinations. [Tr., p. 16, *referring to* pp. 996−999, 1041, 1086−89, 1093] Further, the ALJ highlighted the fact that nothing more "aggressive" than medication was used to treat Johnson's limited range of motion in the spine and spinal tenderness and spasm. [*Id.*, p. 16, *referring to* pp. 1039, 1042,

1094] Instead, the ALJ gave greater weight to consultative examiner Dr. Martin Fritzhand's opinion.[3] [*Id.*, p. 16]

Final responsibility for the RFC determination is a matter reserved for the ALJ. 20 C.F.R. § 404.1527(d)(2). The ALJ properly rejected Dr. Potter's RFC assessment. *See Bass*, 499 F.3d at 511−12. Because Dr. Potter's determination that Johnson was disabled was not supported by his own findings, his opinion was not entitled to controlling weight. *See* 20 C.F.R. § 404.1527(c)(3); S.S.R. 96-2p, 1996 WL 374188, *1 (July 2, 1996); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In addition, the opinion was contradicted by another examination, which mirrored Dr. Potter's notes regarding Johnson's normal reflexes, normal motor strength, intact sensation, normal gait, and normal joint stability. [*Compare* Tr., pp. 985−87 *with* pp. 951−52] Moreover, Dr. Potter's RFC determination was largely based on the Claimant's subjective complaints. *See Tate*, 467 F. App'x at 433. Because Dr. Potter's conclusions regarding Johnson's ability to work were not supported by the record as a whole, the ALJ properly discounted them. *See* 20 C.F.R. § 404.1527(c)(4); *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001).

### b. Dr. Dawson

---

[3] Johnson does not challenge the ALJ's affording of "greater weight" to Dr. Fritzhand's opinion [Tr., p. 16], but the Court notes than an examining source's opinion may be entitled to greater weight than a treating physician's opinion when it is supported by objective evidence and consistent with the record as a whole. 20 C.F.R. § 404.1527(c)(3)−(4). Here, Dr. Fritzhand's opinion was based on his own examination, and it was consistent with Dr. Potter's findings regarding Johnson's normal reflexes, motor strength, gait, and joint stability, as well as Dr. Rigby's and Dr. Lisa Banchik's similar findings. [*Compare* Tr., pp. 985−993 *with* pp. 951−52, 976, 1041] As a result, the ALJ did not err in according greater weight to Dr. Fritzhand's opinion in determining the Claimant's RFC.

The Claimant also argues that the ALJ erred in relying on Dr. Dawson's opinion in assessing Johnson's RFC. [Record No. 12-1, p. 13] In particular, Johnson takes issue with the fact that Dr. Dawson did not review certain medical records. However, a non-examining source is not required to review the full medical record. *See Brooks*, 531 F. App'x at 642. Instead, the source's opinion must simply be based on objective reports. *See Melton ex rel. Estate of Melton v. Comm'r of Soc. Sec.*, 178 F.3d 1295 (table), 1999 WL 232700, *5 (6th Cir. 1999). Here, Dr. Dawson's opinion was based on Dr. Rigby's examination. [Tr., p. 80] Consequently, it was properly based on objective findings. *See id.*

Contrary to Johnson's assertion, the ALJ did not accord greater weight to Dr. Dawson's opinion than Dr. Potter's. In fact, she barely discussed Dr. Dawson's opinion in the RFC assessment, instead thoroughly discussing Dr. Potter's and Dr. Fritzhand's opinions. [Tr., p. 16] In any event, the ALJ could afford greater weight to a non-examining source opinion based on incomplete evidence as long as the ALJ reviewed the part of the record absent from the non-examining source's report. *See Brooks*, 531 F. App'x at 642. In her RFC evaluation, the ALJ reviewed the July 3, 2012 X-ray of the lumbar spine, the July 12, 2012 Magnetic Resonance Imaging ("MRI") of the lumbar spine, and the August 6, 2012 Electromyography/Nerve Conduction Report referenced by the Claimant. [Record No. 12-1, p. 13; Tr. p. 16, *referring to* pp. 577, 1076−82, 1143]

Further, as discussed above, the ALJ referenced Dr. Potter's RFC assessment in her determination, meaning she did not blindly accept Dr. Dawson's RFC assessment. [Tr., p. 16] And while Johnson points out that Dr. Dawson failed to review any records concerning his hand injury, the ALJ's RFC incorporated additional reaching, feeling, fingering, and

handling restrictions not found in Dr. Dawson's RFC determination but appearing in Dr. Potter's RFC determination. [*Compare* Tr. p. 15 *with* pp. 81, 1086]  To the extent Johnson claims that the ALJ did not specifically discuss Dr. Potter's findings regarding his hand injury, such an error does not mandate reversal.  *See Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 536 (6th Cir. 2001).

### C.  Hypothetical Posed to Vocational Expert

The Claimant asserts that the ALJ's hypothetical to VE Harpool was improper because it did not include restrictions noted by Dr. Potter and Dr. Rigby.  [Record No. 12-1, pp. 3, 12]  A VE's response to a hypothetical question only constitutes substantial evidence where it "accurately portrays [the plaintiff's] individual physical and mental impairments." *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987).  However, an ALJ is only required to incorporate the limitations he accepts as credible.  *Casey*, 987 F.2d at 1235 (affirming Secretary's decision where ALJ's hypothetical question to VE included only some of the plaintiff's alleged illnesses).  The ALJ assesses what the claimant "can and cannot do." *Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 633 (6th Cir. 2004).  Where there is "some evidence in the record" supporting the assumptions of the hypothetical, the hypothetical question is not erroneous.  *Chandler v. Comm'r of Soc. Sec.*, 124 F. App'x 355, 358−59 (6th Cir. 2005).

The ALJ posed six hypotheticals to Harpool.  [Tr., pp. 48−52]  In the first hypothetical, the VE was asked to assume than an individual could lift and carry 20 pounds occasionally, 10 pounds frequently, stand or walk six hours in an eight hour work-day, and sit six hours in an eight hour work-day.  [*Id.*, p. 48]  The rest of the hypothetical mirrored the

ALJ's RFC restrictions. [*Id.*, pp. 48−49] Johnson contends that the hypothetical should have more closely corresponded to Dr. Potter's RFC determination. [Record No. 12-1, p. 10] In large part, the ALJ based her hypothetical on the evidence she found to be credible, as she was entitled to do. *Casey*, 987 F.2d at 1235; *Webb*, 368 F.3d at 633. However, she failed to include any mental restrictions in any of her hypotheticals. While such a deficiency could be proper under some circumstances, it was improper where the ALJ failed to discuss the mental limitations at all in her RFC assessment. *Compare with Parmley v. Colvin*, Civil Action No. 14-121-DLB, 2015 WL 3619212, *6 (E.D. Ky. Jun. 9, 2015) (harmless error where RFC was deficient but ALJ included all claimant's limitations in the hypotheticals posed to the VE).

### IV.

ALJ Jackson did not err in her assessment of the severity of the Claimant's physical and mental impairments. However, she failed to consider Johnson's mental impairments in her determination of his RFC. Therefore, substantial evidence does not support the ALJ's determination that Johnson was not disabled from March 23, 2012, through the date of the administrative hearing. Accordingly, it is hereby

**ORDERED** as follows:

1. Plaintiff Charles Johnson's Motion for Summary Judgment [Record No. 12] is **GRANTED**, in part, to the extent that he seeks a remand for further administrative proceedings. To the extent he seeks an award of benefits at this time, the motion is **DENIED**.

2. Defendant Carolyn W. Colvin's Motion for Summary Judgment [Record No. 15] is **DENIED**.

3. The decision of Administrative Law Judge Karen R. Jackson is **REMANDED** for further administrative proceedings consistent with this opinion and pursuant to sentence four of 42 U.S.C. § 405(g).

This 13th day of June, 2016.

Signed By:
*Danny C. Reeves* DCR
United States District Judge